## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## ORLANDO DIVISION

**MICHAEL COPON and**
**MICHAEL COPON STUDIOS,**
**LLC,**

      **Plaintiffs,**

v.                                                            Case No: 6:23-cv-1987-PGB-DCI

**FRANCIS LARA HO, 1521**
**MOVIE, LLC, INSPIRE**
**STUDIOS, INC. and 7M**
**PICTURES, LLC,**

      **Defendants.**
_____/

## ORDER

This cause is before the Court on the Plaintiffs' Motion for Preliminary Injunction and related relief (Doc. 66 (the "**Motion**")). The Defendants submitted a Response in Opposition (Doc. 90), and the Plaintiffs filed a Reply. (Doc. 92). Upon consideration, the Plaintiffs' Motion is denied.

**I.     BACKGROUND**

This matter was begun on October 15, 2023 when the Plaintiffs sued the Defendants for copyright infringement, breach of written contract, breach of an oral contract, fraudulent misrepresentation, unjust enrichment, quantum meruit, misappropriation of likeness, and violation of right of publicity. (Doc. 1). The Plaintiffs sought compensatory, consequential, statutory, and punitive damages and an accounting. (*Id.*). The Plaintiffs did not, however, seek injunctive relief. (*See*

*id.*). One month later, the Plaintiffs filed an Amended Complaint which contains additional factual allegations and through which the Plaintiffs sought an award of damages and an accounting, but not injunctive relief. (Doc. 15). In response, on December 18, 2023, the Defendants filed a motion to dismiss the Amended Complaint. (Doc. 31). The Plaintiffs filed a response in opposition on January 8, 2024. (Doc. 38). The Court entered an Order granting in part and denying in part the Defendants' motion to dismiss, finding the Amended Complaint to constitute a shotgun pleading. (Doc. 54).

The Second Amended Complaint (Doc. 58 (the "**SAC**")) was filed on March 1, 2024, this time seeking declaratory judgment regarding co-author and co-owner ownership of the copyrights to the subject Shooting Script, (Doc. 58, pp. 48–56; 64–69), accounting for income, revenue, and profits, (*id.* at pp. 56–60; 69–71), direct copyright infringement, (*id.* at pp. 60–64; 71–76), contributory infringement, (*id.* at pp. 77–79), vicarious infringement, (*id.* at pp. 79–81), breach of written contract, (*id.* at pp. 82–84), violation of the Lanham Act, (*id.* at pp. 85–91), breach of oral contract, (*id.* at pp. 91–97), unjust enrichment, (*id.* at pp. 97–99), quantum meruit, (*id.* at pp. 99–105), fraudulent misrepresentation, (*id.* at pp. 106–112), violation of right to publicity, (*id.* at pp. 113–117), misappropriation of likeness (*id.* at pp. 117–120), and a violation of the Florida Deceptive and Unfair Trade Practices Act, (*id.* at pp. 121–124). The Plaintiffs seek an accounting and 50% of all profits derived from the sale, license or exploitation of the treatments and scripts for The Film, along with credit that Plaintiff Michael Copon ("**Plaintiff**

2

**Copon**") was the co-author and director of The Film. (*Id.* at pp. 125–126). For the first time, the Plaintiffs also requested injunctive relief. (*Id.*). Two weeks later, and five months after the litigation was initiated, the Plaintiffs filed a "'Time Sensitive' Motion for Preliminary Injunction."[1] (Doc. 66).

## II. LEGAL STANDARDS

The grant or denial of a preliminary injunction rests in the discretion of the district court. *Canal Auth. of the State of Fla. v. Callaway*, 489 F.2d 567, 572 (5th Cir. 1974).[2] The district court, however, does not have unbridled discretion and must exercise that discretion based on the "four prerequisites for the extraordinary relief of preliminary injunction." *Id.* (internal quotation marks omitted). The parties agree that the four prerequisites which Plaintiffs must establish are: (1) a substantial likelihood of success on the merits of the underlying case; (2) irreparable harm in the absence of an injunction; (3) that the harm suffered by Plaintiffs in the absence of an injunction would exceed the harm suffered by Defendants if the injunction issued; and (4) that an injunction would not disserve the public interest. *Johnson & Johnson Vision Care, Inc. v. 1-800 Contacts, Inc.*, 299 F.3d 1242, 1246–47 (11th Cir. 2002); *Miccosukee Tribe of Indians of Fla. v. United States,* 571 F. Supp. 2d 1280, 1283 (S.D. Fla. 2008). "[A] preliminary injunction is an extraordinary and drastic remedy not to be granted unless the

---

[1] A motion cannot fairly be characterized as "time sensitive" when the movant delays five months to seek the relief requested in the motion.

[2] The Eleventh Circuit has adopted as binding precedent all decisions rendered by the former Fifth Circuit. *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc).

3

movant clearly establishe[s] the 'burden of persuasion' as to each of the four prerequisites." *Siegel v. LePore,* 234 F.3d 1163, 1176 (11th Cir. 2000) *(*quoting *McDonald's Corp. v. Robertson*, 147 F.3d 1301, 1306 (11th Cir. 1998) (emphasis added).

## III.   DISCUSSION

### A.   Likelihood of Success on the Merits

Plaintiff Copon attests, and cites the declarations of other witnesses who attest, that he co-wrote and co-authored the 1521 Shooting Script as alleged in Count I of the SAC. (Doc. 66, p. 5). The Defendants counter Plaintiff Copon's assertion that he is a co-author and thus co-owns the copyrights and that Defendants' copyright certificates are invalid, with the declaration of Mary Krell-Oishi ("**Oishi**"). (Doc. 90, p. 6). The Defendants argue that they entered into a Screenwriter Deal Memo between Inspire Studios and Oishi which conveys to the producer sole ownership of the "Picture, Work and all of the results and proceeds of Writer's services and all US and international copyrights and extensions and renewals thereof." (*Id.* at pp. 6–7). Oishi further attests that Defendant Francis Lara Ho had the idea for the film in the fall of 2020 and that Plaintiff Copon's revisions to the screenplay were "minor, inconsequential, and part of a customary 'director's pass.'" (*Id.* at p. 7 (citing Doc. 67-4)). The Defendants also cite declarations by Bernabe Sarabia and Michael Barder who attest that Plaintiff Copon was never a producer of the film. (*Id.* at pp. 7–8). Without belaboring the point, as relates to Counts I, III, IV, VI, VII and VIII, the parties present equally

4

compelling and directly contradictory positions. As a result, the Plaintiffs fail to carry the burden of showing a substantial likelihood of success on the merits at this preliminary juncture.[3]

Turing to the Lanham Act claims, the Plaintiffs contend the Defendants violated Section 43(a) of the Lanham Act with "false associations, false designations of services, false advertising and unfair competition against Plaintiffs in commercial speech to influence the public purchasing decisions and/or to unfairly compete with Plaintiffs." (Doc. 66, p. 15). The Plaintiffs support the Lanham Act claims with the assertion, and supporting declarations, that Plaintiff Copon was the sole director of The Film. (*Id.* at p. 16). The Defendants counter that the Plaintiffs have failed to allege the use of a confusingly similar name or mark by the Defendants, that the advertisements actually deceived customers or had a tendency to deceive a substantial portion of the targeted audience, or that the purported deception is likely to influence purchasing decisions. (Doc. 90, pp. 8–9 (citing *ADT LLC v. Safe Sec. Inc.*, No. 20-23918-CIV, 2021 U.S. Dist. LEXIS 78591, *1, *7 (S.D. Fla. Apr. 23, 2021)). The Court agrees that the Plaintiffs have failed to establish a likelihood of success on the merits as to the Lanham Act claims.

---

[3] "A substantial likelihood of success on the merits requires a showing of only likely or probable, rather than certain, success." *Navarro v. Florida Inst. of Tech. Inc.*, No. 22-cv-1950, 2023 WL 2078264, at *4 (M.D. Fla. Feb. 17, 2023) (citations omitted). To show that a plaintiff is likely to prevail on the merits, a plaintiff need only demonstrate the likelihood of prevailing on one cause of action. *Schiavo ex rel. Schindler v. Schiavo*, 403 F.3d 1289, 1298, 1299 (11th Cir. 2005).

Finally, as to Counts XIX and XX, the Court agrees with the Defendants that the Plaintiffs have failed to produce adequate proof of their likelihood of success on the merits. The Defendants cite the Memorandum of Agreement (Doc. 58-3) between 1521 Movie LLC and Michael S. Copon ("Artist") for Artist's services as the director of The Film which provides: "Producer shall have the right, in perpetuity and throughout the universe, to use Artist's name, approved likeness and/or approved biography in connection with the production, exhibition, advertising, promotion and/or other exploitation of the Picture . . . ." As such, the Plaintiffs have not demonstrated a substantial likelihood of success on these claims, except perhaps for Plaintiff Copon's assertion that he was not compensated for his services and such compensation is a condition to consent. The Defendants rely on the Memorandum of Agreement as evidence of consent. (Doc. 90, p. 10). Even so, the Memorandum of Agreement specifies that compensation is subject to the satisfaction of "Contingent Conditions" and will be negotiated in good faith. (Doc. 90-1, ¶¶ 3–4). Plaintiff Copon has not put forth evidence that the conditions were satisfied or that negotiations over compensation took place. Accordingly, the Plaintiffs fail to satisfy their burden of proof on the likelihood of success as to Counts XIX and XX.

### B. Irreparable Harm

The Defendants argue, and the Court agrees, that the Plaintiffs fail to make a showing of irreparable harm. Monetary damages were sought by the Plaintiffs in

each iteration of the complaint alongside an accounting.[4] In fact, Plaintiff Copon requests fifty percent (50%) of all profits derived from the sale, license or exploitation of The Film. There is no better way to calculate damages than to allow the Plaintiffs to perform an accounting of the revenue generated by The Film's release. To the extent that Plaintiff Copon claims he has a right to credit for his creative contribution to The Film, the equities or balance of harm does not favor stopping the continued distribution and viewing of a film already in the public domain to protect Plaintiff Copon's entitlement to inclusion in the credits.[5]

## IV. CONCLUSION

For these reasons, the Plaintiffs' Motion for Preliminary Injunction and for related relief (Doc. 66) is **DENIED**.[6]

**DONE AND ORDERED** in Orlando, Florida on May 20, 2024.

---

[4] "The basis of injunctive relief in the federal courts has always been irreparable harm and inadequacy of legal remedies." *Sampson v. Murray*, 415 U.S. 61, 88 (1974). Further:

> The key word in this consideration is irreparable. Mere injuries, however substantial, in terms of money, time and energy necessarily expended in the absence of a stay, are not enough. The possibility that adequate compensatory or other corrective relief will be available at a later date, in the ordinary course of litigation, weighs heavily against a claim of irreparable harm.

*Id.* at 90 (internal citation and quotation marks omitted).

[5] The Defendants submitted evidence that stopping the release/screening of The Film—even assuming the Court's jurisdiction extends beyond the United States—would result in a loss of $10,290,000. Plaintiff Copon, on the other hand, fails to quantify the reputational loss potentially caused by the continued release of The Film.

[6] The Court need not reach the Plaintiff's motion to order Defendants to deliver a copy of The Film to Plaintiff Copon without the "false credits," based on the Court's finding that the Plaintiffs have not, at this point, demonstrated substantial likelihood of success on the merits. Nor will the Court grant an open-ended expansion of the deadlines established by the CMSO by allowing the Plaintiffs to amend the SAC if and when Copon applies for and obtains his copyrights in The Film.

7

 

PAUL G. BYRON
UNITED STATES DISTRICT JUDGE

Copies furnished to:

Counsel of Record
Unrepresented Parties